**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TOAN HUU LE,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:26-1751** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSICA SAGE, *et al.*,** | : | |
| **Respondents** | : | |

## MEMORANDUM

Pending before the court is petitioner Toan Huu Le's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Le's petition will be **DENIED WITHOUT PREJUDICE**.

### I. BACKGROUND

Petitioner Toan Huu Le is a citizen of Vietnam. (Doc. 4-2). On February 27, 1991, Le entered the United States at the age of eight, pursuant to a family petition by his United States-citizen grandparents. (Doc. 1, ¶3); (Doc. 1-7). Since his arrival in the United States, Le has accumulated a lengthy criminal history. He has been convicted of statutory sexual assault, twice of corruption of minors, indecent assault of a person less than sixteen years of age, three times of indecent exposure, attempted criminal luring, and driving under the influence. (Doc. 4-2 at 3). Following a 2010 conviction for statutory sexual assault, corruption of minors, and indecent assault, Le was found to

be removable pursuant to §237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") and ordered removed by an immigration judge on July 22, 2013. (Doc. 4-4). Le waived his right to appeal the order. *Id.* However, following failed attempts at removal, Le was released under supervision until his re-detention on December 18, 2025. (Doc. 1, ¶3). He is currently detained at FCI Lewisburg in Lewisburg, Pennsylvania.

Following Le's re-detention, on January 16, 2026, a deportation officer served him with a notice of file custody review, indicating that his custody status would be reviewed on March 18, 2026, and providing him instructions on what he was required to do and what information he must provide to assist in obtaining travel documents necessary for his removal. (Doc. 4-3). On January 28, 2026, ICE issued a warrant of removal for Le and submitted a travel document request to the embassy of Vietnam. (Doc. 4-4 at 1, 14). Finally, on June 8, 2026, the travel document request "submission was forwarded to the appropriate Attache for processing to effectuate removal to Vietnam." (Doc. 4-5 at 3).

On June 24, 2026, Le filed the present petition for habeas corpus, arguing that his detention has become illegally prolonged and that it does not appear that his removal will occur in the reasonably foreseeable future.

(Doc. 1). On July 9, 2026, Respondent filed her response to the petition. (Doc. 4). No reply brief was filed. Thus, the petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have

jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland

Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Le is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six

months of detention to noncitizens held beyond the 90-day removal period set by §1231).

**c. Merits**

Le argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals

could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, Le's order of removal became final on July 22, 2013, when he waived his right to appeal it. (Doc. 4-4); 8 C.F.R. §1241.1(b) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (b) Upon waiver of appeal by the respondent"). He was later released until his re-detention on December 18, 2025.

In order to understand the Government's failure to remove Le over the last 13-plus years despite a final order of removal, some historical context is needed. Following the Vietnam War, the United States did not deport Vietnamese citizens until 2008, when the two countries signed an agreement establishing repatriation procedures. *See* "Agreement Between the

Government of United States of America and the Government of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens," Jan. 22, 2008, Treaties and Other International Acts Series 08-322, https://www.state.gov/wp-content/uploads/2019/02/08-322-Vietnam Repatriations.pdf. However, this agreement protected all pre-1995 Vietnamese arrivals to the United States from deportation. *Id.*, art. 2, ¶ 2. This was the *status quo* until November of 2020, when the two countries signed a Memorandum of Understanding ("MOU") that created a deportation process for pre-1995 arrivals. *See* "Memorandum of Understanding Between the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Viet Nam on the Acceptance of the Return of Vietnamese Citizens who Arrived in the United States before July 12, 1995 and who have been Ordered Removed from the United States," Nov. 21, 2020. Still, following the MOU, ICE policy was to release detainees within 90-days of a final order of removal, rather than effectuating deportation. But, in June of 2025, ICE "rescinded its policy of generally finding that pre-1995 Vietnamese immigrants are not likely to be removed in the reasonably foreseeable future and of generally releasing them within 90 days of the entry of their final orders of removal." *See* Asian Law Caucus, "Resources on Deportation of Vietnamese Immigrants who

Entered the U.S. before 1995," Jul. 15, 2025, https://www.asianlawcaucus .org/news-resources/guides-reports/trinh-reports.

Given this background, the Government's failure to effectuate a removal prior to the June of 2025 change in internal ICE policy will not be weighed against it in determining the length of the delay in deporting Le. Moreover, the time between June of 2025 and Le's re-detention on December 18, 2025, will not be credited toward his length of detention, as it stands to reason that the Government was not prepared to immediately locate, detain, and remove all pre-1995 Vietnamese arrivals with final orders of removal. Thus, Le's detention became presumptively unreasonable on June 19, 2026, six months and one day after he was re-detained.

However, the Government has sufficiently maintained efforts to ensure that Le is removed in the reasonably foreseeable future, including submitting his travel document application to Vietnam. (Doc. 4-4 at 2). Once the application is approved, his removal will likely be imminent. Moreover, "in Fiscal Year (FY) 2025 there were 699 people removed to Vietnam, including 327 which were pre-1995 entries. To date, since FY2025, no [travel document] request to Vietnam has been denied. Additionally, there are regular charters scheduled to Vietnam." (Doc. 4-5, ¶15). Thus, it appears that

Le will be deported in the reasonably foreseeable future. Accordingly, his request for relief will be denied.

The court notes, however, that Le may file subsequent habeas petitions if it turns out that his detention does, in fact, become unreasonably prolonged.

## IV. CONCLUSION

For the foregoing reasons, Le's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED WITHOUT PREJUDICE**. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 31, 2026**
26-1751-01